IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Terry Smith, <br><br> Plaintiff, <br><br> v. <br><br> Arkonik SVO, LLC and Arkonik, LTD, <br><br> Defendants. | C/A No. 2:26-cv-00815-BHH <br><br> **COMPLAINT** |

Plaintiff Terry Smith ("Smith") complains of Defendants Arkonik SVO, LLC and Arkonik LTD (collectively, "Arkonik") as follows:

### INTRODUCTION

1. Arkonik is in the business of building luxury custom Land Rover Defenders.

2. Smith entered into contract with Arkonik to build a custom Land Rover Defender.

3. Arkonik drastically misrepresented Arkonik's track record and capabilities of delivery of the Land Rover Defender and failed to deliver the Land Rover Defender to Smith as agreed.

4. As of the date of this filing, Smith has paid Arkonik $279,302.50 and received nothing in return.

5. Through this action, Smith seeks damages and other relief for the conduct described herein of Arkonik.

### PARTIES, JURISDICTION AND VENUE

1. Terry Smith ("Smith") is an individual who resides in Pelham, Alabama and is a citizen of Alabama.

1

2. Defendant Arkonik SVO, LLC is a limited liability corporation organized and existing under the laws of the State of South Carolina and doing business in Charleston, South Carolina.

3. Defendant Arkonik, LTD is a business entity organized and existing under the laws of the United Kingdom and doing business in Charleston, South Carolina.

4. This Court has jurisdiction over the parties and the subject matter of this action as events giving rise to this Complaint occurred in Charleston, South Carolina.

5. This is a dispute between parties from different states or countries and the amount in dispute is in excess of $75,000. Plaintiff invokes the subject matter jurisdiction of this Honorable Court under 28 U.S.C. § 1332.

6. The Charleston Division for the District of South Carolina is the proper venue.

## FACTUAL ALLEGATIONS

7. On May 31, 2023, Smith entered into a contract ("Original Contract") with Arkonik. Under the Original Contract, Arkonik agreed to provide a custom-built Land Rover Defender 110 ("Land Rover Defender") for a fee of $258,605.

8. Under the Original Contract, payment for the Land Rover Defender was to be made in four equal installments, each representing 25% of the purchase price.

9. The first installment, amounting to $64,651.25, was paid by Smith on June 1, 2023.

10. The second installment, amounting to $64,651.25, was paid by Smith on August 11, 2023.

11. On January 31, 2024, Smith entered into a contract ("New Contract"), for the Land Rover Defender. The New Contract reflects further customization of the Land Rover Defender agreed by the parties.

12. Under the updated terms of the New Contract, it was agreed by the parties that the two final installments should be for $81,911.25 each.

13. The New Contract further provided that the funds to be paid by Smith in respect of the third and part of the fourth installment should come from the proceeds of the sale of a separate vehicle, owned by Smith and which Arkonik had agreed to sell on his behalf.

14. On May 13, 2024, Arkonik emailed Smith informing him that they found a buyer for his vehicle, have received the funds from the buyer in full, and have allocated $150,000 from the sale towards his custom build vehicle.

15. Thus, as of May 13, 2024, Smith had paid $279,302.50.

16. On June 2, 2024, Smith emailed Scott McCabe ("McCabe"), Client Services Manager at Arkonik, asking for an update on the delivery of the Land Rover Defender. On June 5, 2024, McCabe replied explaining that there have been "production delays…caused by difficulties with our LT4 engine package installations." As an alleged consequence of these delays, McCabe informed Smith that "we are currently scheduled for your Defender to leave the UK in February of next year…with final completion and handover to you in May 2025."

17. On June 10, 2024, Smith emailed Thomas Parry ("Parry"), Managing Director of Arkonik, requesting a phone call to discuss resolution of this delay. It was not until June 26, 2024, when a phone call with Parry took place.

18. On September 4, 2024, Smith emailed Parry asking whether delivery of the Land Rover Defender had been moved up following their conversation. No response was given.

19. On October 24, 2024, Smith received an email from Grant Spicer ("Spicer"), Business Development Director of Arkonik. In his email, Spicer explained that "[o]ver the past few years, we've faced several significant challenges…we are now responding to the additional

pressure of the current economic downturn and reduced demand." Spicer then proceeded to set out the challenges facing Arkonik. As a result, Spicer informed Smith that the updated estimate for competition of the Land Rover Defender was August 2025.

20. On November 26, 2024, in response to the new estimation for completion, Smith replied to Spicer stating: "I won't be able to wait till August of 2025 due to health issues. Let me know how to go about getting a refund as soon as possible." No response was provided.

21. On December 9, 2024, Smith sent Spicer a follow up email asking; "How do I go about getting a refund?" In response, Spiced replied, "Unfortunately we're unable to offer refunds at this time.

22. On December 16, 2024, Arkonik offered Smith:

   a. Option 1: If you no longer wish to wait to take delivery of your Defender, we can assist in selling the vehicle on your behalf. Once the vehicle is completed, we would market and list it for sale. After securing a buyer and receiving full payment, we would be able to remit payment of an agreed amount to you.

   b. Option 2: If you prefer not to wait until your vehicle is fully completed, we have several inventory vehicles available for immediate purchase. However, this would require a full payment for the inventory vehicle, as funds from your custom build cannot be transferred. Once your custom build is completed, we could proceed with selling it (as per Option 1) and remit an agreed total upon receipt of funds from the buyer.

23. Neither of these proposed solutions were commercially reasonable or acceptable to Smith. Smith reasonably expected to receive the Land Rover Defender within a reasonable timeframe. Arkonik failed to do that.

24. On January 27, 2025, and February 28, 2025, Smith received emails from Arkonik, each confirming that the projected completion of the Land Rover Defender was August 2025.

25. On April 4, 2025, McCabe sent an email to Smith in which he wrote: "Regarding your Defender, and taking into account the delays that our team continues to face, the projected completion of your vehicle is now October."

26. In May 2025, Smith retained counsel, which sent a letter demanding payment in the amount of $279,302.50. Arkonik did not respond to his letter.

27. To date, Smith has not received the Land Rover Defender, nor any payment from Arkonik.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

28. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

29. The New Contract between Smith and Arkonik is valid and enforceable.

30. Arkonik materially breached the New Contract by, among other things, failing to deliver the vehicle Smith purchased under the agreement.

31. Accordingly, as a direct and proximate result of Arkonik's material breaches, Smith has been damaged in the amount of $279,302.50, pre-judgment interest, plus consequential damages resulting from Smith's funds being utilized by Arkonik for improper purposes for more than two years.

### SECOND CAUSE OF ACTION
### (CONVERSION)

32. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

33. Smith has a personal right to the funds that he has paid to Arkonik to date.

34. Smith has a right to the immediate possession of the funds that he has paid Arkonik to date.

35. Arkonik has unlawfully retained Smith's funds and refuses to return same despite several demands to do so.

36. As a result of Arkonik's unlawful retention of Smith's property, Smith has been damaged in the amount of $279,302.50, prejudgment interest, plus consequential and punitive damages.

### THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

37. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

38. Arkonik has unjustly retained a benefit, the $279,302.50 paid by Smith to Arkonik. Smith has received nothing in return.

39. Arkonik's retention of this benefit is Smith's detriment and Arkonik's retention of that benefit violates the fundamental principles of justice, equity, and good conscience.

40. As a direct and proximate result of Arkonik's unlawful retention of the benefit conferred upon it by Smith, Arkonik has been unjustly enriched in the amount of $279,302.50.

### PRAYER FOR RELIEF

WHEREFORE, Smith respectfully prays for:

a. Judgment in favor of Smith as to the First Cause of Action;

b. Judgment in favor of Smith as to the Second Cause of Action;

c. Judgment in favor of Smith as to the Third Cause of Action;

d. An award of compensatory damages to fully compensate Smith for the losses incurred as a result of Arkonik's actions, including but not limited to the amount of $279,302.50, plus any

additional amounts to be determined at trial;

    e.    An award of pre-judgment and post-judgment interest on all sums awarded;

    f.    An award of attorneys' fees and costs;

    g.    For such other and further relief as the Court may deem just and proper.

    Respectfully submitted,

    GALLIVAN, WHITE & BOYD, P.A.

By:    */s/ Ioannis (Ian) G. Conits*
    Ioannis (Ian) G. Conits (Fed. Id. 12818)
    55 Beattie Place, Suite 1200
    Post Office Box 10589
    Greenville, South Carolina 29201
    (864) 271-9580
    iconits@gwblawfirm.com

    *Attorney for Plaintiff Terry Smith*

February 26, 2026